```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X    Case No. 20-cv-3311
SOCIAL LIFE MAGAZINE, INC.,

         Plaintiff,
v.

SENTINEL INSURANCE COMPANY
LIMITED,

         Defendant.
-------------------------------X
```

<u>PLAINTIFF'S DECLARATION OF JUSTIN MITCHELL IN SUPPORT OF APPLICATION FOR A PRELIMINARY INJUNCTION</u>

I, declare, under the penalty of perjury under the laws of the United States of America, that the following is true and correct:

1.   I am the President of the plaintiff Social Life Magazine Inc. and am fully familiar with the facts and circumstances relating to this action.  I submit this declaration in support of plaintiff's s application for a preliminary injunction.

2.   This application is to request that the Court order defendant to pay $197,000 in connection with plaintiff's claims for (1) loss of business income sustained during a necessary suspension of operations and (2) loss of business income sustained during the 60 days after access to plaintiff's business was prohibited by order of a civil authority (i.e., New York State Executive Order 202.8) as of 8:00 p.m. on March 22,

2020.

3. The Complaint is attached hereto as Exhibit 1. Plaintiff's insurance policy with defendant is attached hereto as Exhibit 9.  Attached hereto as Exhibit 2 is New York State Executive Order 202.  Attached hereto as Exhibit 3 is New York State Executive Order 202.8. Attached hereto as Exhibit 4 is New York State Executive Order 202.6.  Attached hereto as Exhibit 11 is New York State Executive Order 202.17.  Attached hereto as Exhibit 12 is New York State Executive Order 202.18.

4. On March 17, 2020, plaintiff ceased its business operations including operations at its office premises due to contamination of the premises by the coronavirus known as SARS-Cov-2 in New York City.  Because plaintiff's equipment is specialized and industrial in nature, plaintiff's employees and independent contractors could not and have not telecommuted or worked from home since March 17, 2020 to produce plaintiff's product that is a Spring-Summer-Fall monthly magazine of approximately 160 pages distributed in and in front of retail establishments in the East End region of Long Island, New York, including West Hampton, Hampton Bays, Sag Harbor, Bridgehampton, Southampton, East Hampton, Amagansett, Wainscot and Montauk.  Since 2004, I have operated the plaintiff whose business has been to print 6-8 monthly glossy magazines per year containing approximately 160 pages per issue from May to November each

year.

5. Plaintiff's two insurance claims at issue in this application were made in a telephone call to the defendant by plaintiff's insurance broker on or about March 17, 2020. On March 26, 2020, defendant sent plaintiff a letter denying plaintiff's insurance claims. (Exhibit 5 hereto). On April 17, 2020, plaintiff's attorney sent a letter to defendant requesting that it re-open plaintiff's claims. (Exhibit 6 hereto). On April 24, 2020, plaintiff's attorney sent an email following up on his April 17, 2020 letter. (Exhibit 7 hereto). On April 27, 2020, defendant denied plaintiff's request to re-open the claims. (Exhibit 8 hereto).

6. Attached hereto as Exhibit 10 hereto are pages from the website for the World Health Organization. Attached hereto as Exhibit 13 is an article from the NY Times stating that New York State will re-open manufacturing sites outside of New York City.

7. Attached hereto as Exhibit 14 is my estimate of the cost for plaintiff to produce 6 monthly issues from May, 2020 to October, 2020. Once plaintiff is back in production, I anticipate that plaintiff will be able to generate on-going advertising sales during the summer of 2020 of half of the amount of company's cost (approximately $197,000). Accordingly, plaintiff requires the insurance proceeds to make up the

shortfall.

8.  Unless plaintiff receives at least $197,000 of the money due under the either of the two business interruption insurance claims by May 17, 2020, plaintiff will lose its good will and its entire business.  Plaintiff intends on utilizing that money to professionally clean the premises on May 16, 2020 when Executive Orders 202.17 and 202.18 expire and limited access to non-essential workplaces in New York City may occur.  (Exs. 11, 12 & 13).  Alternatively, if non-essential workplaces in New York City are still prohibited after May 15, 2020, then plaintiff will be able to find alternative manufacturing sites outside of New York City after May 15, 2020 under the re-opening plan described the Governor of New York State. (Ex. 13).

9.  If plaintiff receives the requested insurance money by May 17, 2020, plaintiff will be able to publish a magazine in time to be distributed by the weekend that starts on Friday, May 29, 2020 and thereby fulfill its contractual obligations with its advertisers.

10. Plaintiff's business will not survive the loss of good will with its advertising customers if it is unable to publish any magazines by the beginning of this summer.  Plaintiff is a small and growing business in an extremely competitive environment that includes Hamptons Magazine, The Daily Front Row, The Purist, Beach Magazine, Avenue, and Dan's Papers.  As a

result, its relationship with its customers is extremely fragile.

11.  If plaintiff is not able to timely deliver its monthly product containing its customers' advertising, those customers will lose confidence in plaintiff and (1) place their advertising with competitors of the plaintiff, (2) never place advertising with the plaintiff in the future once they have secured new advertising options and/or (3) elect not to do business with plaintiff in the future given plaintiff's demonstrated unreliability due to the failure to produce a magazine pursuant to its contractual requirements.

12.  In addition, it is impossible to accurately quantify precisely how much business plaintiff will lose if it cannot publish a magazine this summer with the defendant's insurance proceeds. It is also impossible to accurately quantify precisely how much business plaintiff will continue to lose if it is unable to place the advertisements requested by its customers. Once plaintiff loses a customer, that customer will not return given that it left due to a bad experience with plaintiff's business.

13.  Plaintiff cannot afford to wait for the completion of this lawsuit in order to try to recoup its monetary losses from defendants and re-start its business from scratch.  Unless, plaintiff obtains the requested relief, the irreparable harm to

plaintiff will be complete as plaintiff will be out of business given that the good will and credibility with its advertisers will have been destroyed.

14. Attached hereto as Exhibit 15 are plaintiff's bank statements showing that its business income from March 17, 2019 to May 15, 2019 was $258,587.  Attached hereto as Exhibit 16 are plaintiff's bank statements showing that it generated business income from March 17, 2020 to May 4, 2020 totaling $43,300 from pre-sold advertising sales.  Accordingly, its current insurance claim for money lost from business interruption totals $215,587 (the year-to-year difference between business income in from March 17, 2019 to May 15, 2020, on the one hand, and from Marcy 17, 2020 to date, on the other hand) as shown by Exhibit 17 hereto.

15. As the bank statements in Exhibit 16 show, almost all of the $43,300 in business income received in March, 2020 has been spent on on-going expenses and debts in anticipation that defendant would pay the insurance claims rather than deny them. As a result, if plaintiff is unable to print its magazines this summer, plaintiff will owe the advertisers that provided the $43,300 all that money back.  In addition, plaintiff deposited another approximately $120,000 prior to March, 2020 in pre-sold advertising sales that plaintiff will owe back to those advertisers if plaintiff cannot publish the magazine this

6

summer. As plaintiff's bank statements attached hereto as Exhibit 16 show, plaintiff does not have the approximately $163,300 to pay back to the advertisers. As a result, if plaintiff is not granted the preliminary injunctive relief sought herein, plaintiff will be insolvent.

Dated: New York, New York  
May 4, 2020

_____  
Justin Mitchell