UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X     Case No. 20-cv-3311
SOCIAL LIFE MAGAZINE, INC.,

        Plaintiff,

v.

SENTINEL INSURANCE COMPANY
LIMITED,

        Defendant.
------------------------------X


<u>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR A PRELIMINARY INJUNCTION</u>


                    Gabriel Fischbarg, Esq,
                    230 Park Avenue, #904
                    New York, New York 10169
                    917-514-6261
                    Attorney for Plaintiff

## Table of Contents

Standard for A Preliminary Injunction. . . . . . . . . . .5

Plaintiff Has Shown A Likelihood of Success on the Merits. .6

Plaintiff Has Shown That It Will Suffer Irreparable Harm
If The Request Relief Is Not Given. . . . . . . . . . . . 18

The Balance Of Hardships Tips in Plaintiff's Favor. . . . . 23

The Public Interest Would Not Be Disserved By The Issuance
    Of An Injunction. . . . . . . . . . . . . . . . . . .23

Conclusion. . . . . . . . . . . . . . . . . . . . . . . 23

Table of Authorities

American Guarantee & Liability Ins. Co. v. Ingram Micro, Inc.,
        2000 WL 726789 (D. Ariz. 2000). . . . . . . . . . . . .16

Clorox Intern. Co. v. International Trade Expo, Inc.,
        1995 WL 106104(S.D.N.Y. March 9, 1995). . . . . . . . .18

Datalab Inc. v. St. Paul Fire and Marine Insurance Co.,
        347 F.Supp. 36 (S.D.N.Y. 1972). . . . . . . . . . . . .17

Downtown Restaurant Co. LLC v. Firemen's Insurance Companies,
2007 NY Slip Op 31331 (NY Sup.Ct., NY County 5/17/2007). . . .14

Dundee Mut. Ins. Co. v. Marifjeren, 587 N.W.2d 191(N.D. 1998).16

eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 126 S.Ct. 1837,
        164 L.Ed.2d 641 (2006). . . . . . . . . . . . . . . . 5,6

Essex v. BloomSouth Flooring Corp.,562 F.3d 399(1st Cir.2009).13

Farmers Ins. Co. v. Trutanich,
        123 Or.App. 6, 858 P.2d 1332 (1993). . . . . . . . . . 13

Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am,
        2012-CV-04418, 2014 WL 11770106 (D.N.J. June 11, 2014). .14

Interphoto Corp. v. Minolta Corp., 417 F.2d 621 (2d Cir.1969).20

Jacobson & Co. v. Armstrong Cork Co.,
        548 F.2d 438 (2d Cir.1977). . . . . . . . . . . . . . .19

Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.,
        323 F.Supp.2d 525 (S.D.N.Y. 2004). . . . . . . . . . . 19

Matzner v. Seaco Ins. Co.,1998 WL 566658(Mass.Super.Ct.1998). 16

Meyer Natural Foods LLC v. Liberty Mut. Fire Ins. Co.,
        218 F.Supp.3d 1034 (D.Neb. 2016). . . . . . . . . . . .11

Motorists Mut. Ins. Co. v. Hardinger,
        131 F. App'x 823 (3d Cir. 2005). . . . . . . . . . . . 13

Murray v. State Farm Fire & Casualty Co.,
        509 S.E.2d 1 (W. Va. 1998). . . . . . . . . . . . . . .17

New York City Triathlon, LLC v. Nyc Triathlon Club, Inc.,
    704 F.Supp.2d 305 (S.D.N.Y. 2010) . . . . . . . . . . . 18

Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.,
    2016 WL 3267247 (D. Ore. June 7, 2016) . . . . . . . . .13

Port Authority of New York & New Jersey v. Affiliated FM
Insurance Co., 311 F.3d 226 (3d Cir.2002) . . . . . .12, 13, 15

Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha,
    126 Wn.2d 50, 882 P.2d 703 (Wash. 1994) . . . . . . . . 11

Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co.,
    749 F.2d 124 (2d Cir.1984) . . . . . . . . . . . . . . .19

Salinger v. Colting, 607 F.3d 68 (2d Cir. 2010) . . . . . . . . 5

Semmes Motors, Inc. v. Ford Motor Co.,
    429 F.2d 1197 (2d Cir.1970) . . . . . . . . . . . . . . 19

The Marks Org. Inc. v. Joles,
    784 F.Supp.2d 322 (S.D.N.Y. 2011) . . . . . . . . . . . 18

Ticor Title Ins. Co. v. Cohen, 173 F.3d 63 (2d Cir.1999) . . . 19

Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.,
    60 F.3d 27 (2d Cir. 1995) . . . . . . . . . . . . . . . 20

TRAVCO Ins Co. v. Ward, 715 F. Supp.2d 699 (E.D. Va. 2010),
    aff'd, 504 F. App'x 251 (4th Cir. 2013) . . . . . . . 12, 15

Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.,
    968 A.2d 724 (N.J.Super.Ct., App.Div. 2009) . . . . . 14, 16

Western Fire Ins. Co. v. First Presbyterian Church,
    437 P.2d 52 (Colo.1968) . . . . . . . . . . . . . 13, 14, 15

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR A
PRELIMINARY INJUNCTION

Plaintiff submits this memorandum of law in support of its
application for a preliminary injunction.  The preliminary
injunction sought by plaintiff seeks an order, pending
resolution of this lawsuit, requiring defendant to pay $197,000
in connection with two of plaintiff's insurance claims: (1) loss
of business income sustained during a necessary suspension of
operations and (2) loss of business income sustained during the
60 days after access to plaintiff's business was prohibited by
order of a civil authority (i.e., New York State Executive Order
202.8).

Standard for A Preliminary Injunction

Under the Second Circuit's current test for issuing a
preliminary injunction, in accordance with the Supreme Court's
decision in eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 126
S.Ct. 1837, 164 L.Ed.2d 641 (2006), a district court must
determine that a plaintiff has shown: (1) a likelihood of
success on the merits; (2) that absent an injunction plaintiff
is likely to suffer irreparable injury that cannot be remedied
with monetary damages; (3) that the balance of hardships tips in
favor of Plaintiff; and (4) that "the public interest would not
be disserved" by the issuance of an injunction. Salinger v.

Colting, 607 F.3d 68, 79-80 (2d Cir. 2010), quoting eBay, Inc.,
547 U.S. at 391.

        Plaintiff Has Shown A Likelihood of Success on the Merits

        As set forth in the Complaint, plaintiff has submitted five
separate insurance claims pursuant to its policy with the
defendant resulting from the novel coronavirus known as SARS-
Cov-2.  (Plaintiff's Declaration dated May 4, 2020 ("Pl.Decl."),
Ex. 1, para. 17).  This application relates to only two of those
five claims, namely (1) the claim for loss of business income
sustained from the necessary suspension of operations caused by
the direct physical loss of or physical damage to the property
at plaintiff's premises and (2) the claim for loss of business
income sustained during the 60 days after access to plaintiff's
business was prohibited by order of a civil authority (i.e., New
York State Executive Order 202.8) as of March 22, 2020.

        On March 7, 2020, New York Governor Andrew M. Cuomo issued
Executive Order 202 declaring a State disaster emergency for New
York State due to the novel coronavirus SARS-Cov-2. (Pl.Decl.,
Ex. 2).

        On March 17, 2020, plaintiff ceased its business operations
including operations at its office premises due to contamination
of the premises by the coronavirus known as SARS-Cov-2 in New
York City.  (Pl.Decl., para. 4).  Because plaintiff's equipment
is specialized and industrial in nature, plaintiff's

employees and independent contractors could not and have not telecommuted or worked from home since March 17, 2020 to produce plaintiff's product that is a Spring-Summer-Fall monthly magazine of approximately 160 pages distributed in and in front of retail establishments in the East End region of Long Island, New York, including West Hampton, Hampton Bays, Sag Harbor, Bridgehampton, Southampton, East Hampton, Amagansett, Wainscot and Montauk. (Id.).

On March 20, 2020, New York Governor Andrew M. Cuomo issued Executive Order 202.8 that continued and modified Executive Order 202 by requiring each employer providing non-essential services or functions to reduce the in-person workforce at all work locations by 100% by March 22, 2020 at 8pm. (Pl.Decl., Ex. 3). As set forth in Executive Order 202.6 dated March 20, 2020 that defined essential services and functions, plaintiff's magazine business does not provide essential services excluding it from complying with Executive Order 202.8. (Pl.Decl., Ex. 4).

In response to plaintiff's submitting the two insurance claims described above to the defendant on March 17, 2020, defendant denied the claims on March 26, 2020 on the ground that the coronavirus has not caused any physical loss or damage to property at plaintiff's offices. (Pl.Decl., Ex. 5, p.2). After defendant provided plaintiff with a request to re-open the

claims on April 17, 2020 and with legal authority on April 24, 2020 contradicting the contention that the coronavirus has not caused physical loss or damage to plaintiff's property (Pl.Decl., Exs. 6 & 7), defendant still refused to re-open plaintiff's claims and retract the denial of the claims. (Pl.Decl., Ex. 8).

Since 2004, Plaintiff's business has been to print 6-8 monthly glossy magazines per year containing approximately 160 pages per issue from May to November each year.  (Id., para. 5). Because plaintiff's equipment is specialized and industrial in nature, plaintiff's employees and independent contractors cannot telecommute or work from home to produce plaintiff's magazine. (Id.).

Plaintiff contends that plaintiff's property has been physically damaged and contaminated by the virus SARS-CoV-2 and rendered unusable.  (Pl.Decl., Ex. 1).  Such physical loss or damage has been acknowledged and codified by New York State's Executive Orders 202, 202.6 and 202.8. (Pl.Decl., Exs. 2-4).

Defendant's contention that the loss caused by the coronavirus is not "physical" in nature is contradicted by the insurance policy that specifically recognizes that infestations caused by "insects, birds, rodents, mold, spore or other animals" can cause "physical loss" and/or "physical damage." (Pl.Decl., Ex. 9, p.46 of 142 of pdf file (p.17 of 25 of Special

Property Coverage Form), B. Exclusions, Section 2(c)(5)). The policy does not exclude a virus infestation as a type of loss from a type of physical loss or physical damage that is covered under the policy.  Accordingly, because the policy acknowledges that the infestation of the coronavirus can cause (and has indeed caused) physical loss and physical damage to the scheduled premises and all the equipment therein, the insured is entitled to the requested coverage.

In addition, NY State Executive Order 202 dated March 7, 2020 is specifically based on the January 30, 2020 designation by the World Health Organization (the "WHO") that the novel coronavirus outbreak is a Public Health Emergency of International Concern.  (Pl.Decl, Ex. 2).  As shown by the information from the WHO's website, the virus that causes COVID-19 is transmitted "by touching a contaminated surface." (Pl.Decl., Ex. 10).  The airborne droplets containing the virus generated when an infected person coughs, sneezes or speaks "are too heavy to hang in the air."  (Id.).  As a result, "they quickly fall on floors or surfaces." (Id.).  "[R]espiratory droplets expelled from an infected person can contaminate and persist on surfaces." (Id.).

Again, given that New York State's Executive Order 202.8 has acknowledged and codified that the coronavirus has contaminated the surfaces of the equipment at the scheduled

9

premises (Pl.Decl., Ex. 4), plaintiff contends that it is entitled to coverage under the policy.

Moreover, defendant's "Pollution" exclusion is further evidence that plaintiff is entitled to coverage.  In denying coverage, defendant claimed that "coronavirus is understood to be an irritant or contaminant which causes or threatens to cause physical impurity, unwholesomeness and threatens human health or welfare" and this is included in the definition of a "Pollutant and Contaminant" described in the policy.  (Pl. Decl, Ex. 5, p.4).  However, the policy's definition of "Pollutants and Contaminant" specifically applies only to inanimate or lifeless items like "smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste."  (Pl.Decl., Ex. 9, p.54 of 142 of pdf file (p.25 of 25 of Special Property Coverage Form), G. Property Definitions Section G(15).

In obvious contrast to such items, a virus is a biological contaminant with a specific life cycle that includes replication.  "Pollutants and Contaminants" cannot replicate themselves.

In any case, the pollution and contamination exclusion in the policy only bars coverage for a "discharge, dispersal, seepage, migration, release, or escape of "pollutants". (Pl.Decl., Ex. 9, p.60 of 142 of pdf file (p.4 of 24 of Business Liability Coverage Form), B. Exclusions, Section 1(f)(1)).

These verbs clearly limit the scope of the exclusion.  None of those verbs apply to the mere presence of either the novel coronavirus as a contaminant or any person infected with COVID-19 (the disease caused by the coronavirus). Terms like release, escape, discharge and dispersal all refer to an escape of contaminants from a place of containment, such as a storage tank.  See, e.g., Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha, 126 Wn.2d 50, 882 P.2d 703 (Wash. 1994) (terms such as discharge, dispersal, release or escape in a pollution exclusion presuppose a place of containment).

The mere presence of a virus is not an "escape" of the virus.  Thus, the terms like those used in defendant's pollution exclusion do not encompass the transmission of an infectious disease, which occurs in nature and does not involve a release of contaminants from a confined place. As a result, this is another reason that the pollution exclusion does not bar coverage in this case.

Indeed, other similar insurance policies specifically include a virus pandemic as an exclusion.  For example, the insurance policy in Meyer Natural Foods LLC v. Liberty Mut. Fire Ins. Co., 218 F.Supp.3d 1034, 1038 (D.Neb. 2016) contains an exclusion for:

"The actual or suspected presence or threat of any virus, organism or like substance that is capable of inducing disease,

illness, physical distress or death, whether infectious or
otherwise, including but not limited to any epidemic, pandemic,
influenza, plague, SARS, or Avian Flu.".

Plaintiff's policy does not contain such an exclusion.
(Pl.Decl., Ex. 9). Accordingly, defendant's attempt to stretch
the meaning of the pollution/contaminant exclusion in the policy
at issue is clearly untenable.

Accordingly, an in-depth analysis of relevant case law is
not required to interpret the policy at issue; the plain
language of the policy entitles plaintiff to the requested
coverage.  In any case, an in-depth analysis of the relevant
case law described below also shows that plaintiff is entitled
to the requested coverage.

"The majority of cases appear to support [the] position
that physical damage to the property is not necessary, at least
where the building in question has been rendered unusable by
physical forces." TRAVCO Ins Co. v. Ward, 715 F. Supp. 2d 699,
708 (E.D. Va. 2010), aff'd, 504 F. App'x 251 (4th Cir. 2013).

For example, in Port Authority of New York & New Jersey v.
Affiliated FM Insurance Co., infra, a federal appeals court held
that a building contaminated with asbestos fibers suffered
"physical loss or damage" that triggered property coverage.
While the mere installation of asbestos was not loss or damage,
the court found that the presence or imminent threat of a

12

release of the asbestos would "eliminate[] or destroy[]" the
function of the building, making the structure "useless or
uninhabitable." Port Authority of New York & New Jersey v.
Affiliated FM Insurance Co., 311 F.3d 226, 236 (3d Cir.2002).

Courts throughout the United States have found that the
presence of materials such as fumes, e-coli bacteria and smoke
caused physical loss or damage to property. See, e.g., Essex v.
BloomSouth Flooring Corp., 562 F.3d 399, 406 (1st Cir. 2009)
(finding that, under Massachusetts law, an unpleasant odor
rendering property unusable constituted physical injury to the
property); Motorists Mut. Ins. Co. v. Hardinger, 131 F. App'x
823 (3d Cir. 2005) (contamination of well with e-coli would
render property useless or uninhabitable and therefore
constitute covered physical loss or damage); Oregon Shakespeare
Festival Ass'n v. Great Am. Ins. Co., 2016 WL 3267247, at *9 (D.
Ore. June 7, 2016) (where theater cancelled performances because
of air quality due to nearby wildfires, "[t]he smoke that
infiltrated the theatre caused direct property loss or damage by
causing the property to be uninhabitable and unusable for its
intended purpose"); Western Fire Ins. Co. v. First Presbyterian
Church, 437 P.2d 52 (Colo.1968) (holding the infiltration of a
church by gas fumes constituted a physical loss); Farmers Ins.
Co. v. Trutanich, 123 Or. App. 6, 858 P.2d 1332 (1993) (holding
the saturation of an insured dwelling by methamphetamine fumes

constituted a physical loss); See also <u>Downtown Restaurant Co. LLC v. Firemen's Insurance Companies</u>, 2007 NY Slip Op 31331 (NY Sup.Ct., NY County 5/17/2007) (summary judgment dismissing Complaint denied in order to permit plaintiff to prove at trial whether debris, soot, paper and dust covered the insured premises 1 mile from World Trade Center attacks causing physical damage to said premises).

In <u>Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am., infra</u>, a New Jersey federal court found that the mere presence of an unwanted substance can trigger coverage for polices requiring "direct physical loss or damage." <u>Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am</u>, 2012-CV-04418, 2014 WL 11770106 (D.N.J. June 11, 2014).  That Court held that the ammonia that was released inside an insured's facility constituted "direct physical loss of or damage to" the insured's property, thus meeting the physical damage threshold.  In determining whether Gregory Packaging's property experienced physical harm, the Court cited various cases holding that direct physical loss arises when property is rendered unusable. <u>Id</u>., citing <u>Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co</u>., 968 A.2d 724, 727 (N.J.Super.Ct., App.Div. 2009) (holding that an electric grid was "physically damaged" because of "the loss of function of the system as a whole."), <u>Western Fire Ins. Co. v. First Presbyterian Church</u>, 437 P.2d 52 (Colo. 1968) (holding

that the saturation of a church with gasoline vapors constituted "direct physical loss" because the building was no longer usable), <u>Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co</u>., 311 F.3d 226, 236 (3d Cir. 2002) (holding that "[w]hen the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been" physical damage) and <u>TRAVCO Ins. Co. v. Ward</u>, supra at 709 (finding "direct physical loss" where "home was rendered uninhabitable by the toxic gases" released by defective drywall).

Courts have gone even further than simply holding that non-visible and molecular-level property damage satisfied the "physical loss" requirement for business interruption coverage. Those courts have held that the key consideration is not whether property damage exists, however microscopic that damage may be, but rather whether property has become unsafe or uninhabitable for use. For example, the Supreme Court of Colorado equated the loss of use of property to physical loss or damage in <u>Western Fire Ins. Co. v. First Presbyterian Church</u>, 165 Colo. 34 (1968). In that case, the Court found that a church sustained physical loss of its property when gasoline accumulation around the church building made its premises uninhabitable and its continued use dangerous.

Numerous courts have held that physical loss or damage does not necessitate physical alteration. See American Guarantee & Liability Ins. Co. v. Ingram Micro, Inc., 2000 WL 726789 (D. Ariz. 2000) (finding that "physical damage" includes "loss of access, loss of use, and loss of functionality"); Dundee Mut. Ins. Co. v. Marifjeren, 587 N.W.2d 191, 194 (N.D. 1998) ("Clearly, without qualification, the term "damage" encompasses more than physical or tangible damage."); Matzner v. Seaco Ins. Co., 1998 WL 566658 (Mass.Super.Ct. 1998) (adopting the interpretation of "direct physical loss or damage" to include "more than tangible damage to the structure of insured property").

Relevant case law also shows that temporary loss of use and loss of functionality satisfies the physical loss or damage requirement in the policy at issue. For example, when problems with the North American electrical grid caused a four-day electrical blackout to parts of the United States and Canada, that closed the plaintiff's supermarkets, a New Jersey appellate state court reversed the trial court's grant of summary judgment to the insurer. Wakefern Food Corporation v. Liberty Mutual Fire Insurance Co., 406 N.J. Super. 524 (2009). The Wakefern court rejected the trial court's conclusion that "the definition of 'physical damage' cannot be extended in this case to include the temporary loss of use due to a power interruption, because

16

the property resumed its former use or function as soon as the power was restored, and its value was not diminished."

Likewise, property owners who were required to leave their homes due to large boulders and rocks that had fallen on nearby property sustained a physical loss under their homeowners' policy even though the boulders had not damaged their property. Murray v. State Farm Fire & Casualty Co., 509 S.E.2d 1 (W. Va. 1998). Although they had sustained no structural damage to their homes, the plaintiffs' homes had become "unsafe for habitation, and therefore suffered real damage," covered by the policy because the boulders could cause damage to the plaintiffs' homes at any time.

In Datalab Inc. v. St. Paul Fire and Marine Insurance Co., 347 F.Supp. 36, 37 (S.D.N.Y. 1972), a New York federal court held that business interruption coverage was appropriate where a policy that required physical loss or damage to equipment included equipment that was not visibly damaged but was still non-functioning and could not be utilized "normally in the operation of [the insured's] business."  The Datalab Court found that the equipment had been physically damaged even though (1) the insured's equipment could be still be physically touched as a non-functioning mass of metal, (2) plaintiff was never barred from accessing the equipment and (3) the fire that impaired the use of the equipment occurred on a floor different from the

floor containing the equipment.  <u>Datalab Inc. v. St. Paul Fire and Marine Insurance Co.,</u> 347 F.Supp. at 37-38.

Similarly, in this case, plaintiff's inability to utilize the equipment in its office as of March 17, 2020 means that the equipment has been physically damaged thereby triggering the requested coverage.

For all the foregoing reasons, plaintiff has shown that is likely to succeed on the merits of the breach of contract claim alleged in the Complaint relating to the two insurance claims described above.

<u>Plaintiff Has Shown That It Will Suffer Irreparable Harm If The Request Relief Is Not Given</u>.

Irreparable injury has been defined as harm where "remedies available at law, such as monetary damages, are inadequate to compensate" the plaintiff. <u>Salinger</u>, 607 F.3d at 80 (quoting <u>eBay</u>, 547 U.S. at 391, 126 S.Ct. 1837).

A plaintiff can show a threat of irreparable injury by showing a threatened loss of good will and loss of ability to control its reputation. See <u>New York City Triathlon, LLC v. Nyc Triathlon Club, Inc.,</u> 704 F.Supp.2d 305, 325 (S.D.N.Y. 2010); <u>The Marks Org. Inc. v. Joles</u>, 784 F.Supp.2d 322 (S.D.N.Y., 2011) (Loss of good will constitutes irreparable harm); <u>Clorox Intern. Co. v. International Trade Expo, Inc.,</u> 1995 WL 106104, *8

(S.D.N.Y. March 9, 1995)(Loss of good will constitutes irreparable harm).

Loss of good will is particularly difficult to quantify because monetary damages do not "redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir.1999). Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc., 323 F.Supp.2d 525, 532 (S.D.N.Y. 2004)(loss of client relationships and customer good will built up over the years constitutes irreparable harm).

The Second Circuit has found irreparable harm where a party is threatened with the loss of a business. In Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir.1970), a father-and-son car dealership was threatened with termination of its franchise by the manufacturer. The Court affirmed a finding of irreparable injury on the grounds that termination of the franchise would "obliterate" the dealership and that the right to continue a business "is not measurable entirely in monetary terms." Id. at 1205; see also Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co., 749 F.2d 124, 125-26 (2d Cir.1984) (per curiam) (finding irreparable harm from loss of "ongoing business representing many years of effort and the livelihood of its husband and wife owners"); Jacobson & Co. v. Armstrong Cork Co., 548 F.2d 438, 445 (2d Cir.1977) (affirming finding of

irreparable harm because plaintiff "presented ample evidence to show a threatened loss of good will and customers, both present and potential, neither of which could be rectified by monetary damages"); Interphoto Corp. v. Minolta Corp., 417 F.2d 621, 622 (2d Cir.1969) (per curiam) (affirming finding of irreparable harm because plaintiff "would be unable to calculate its damages since it would suffer not merely loss of profits with respect to [defendant's] goods but loss of good will from the lack of a 'full line'").

"Where the loss of a product will cause the destruction of a business itself or indeterminate losses in other business, the availability of money damages may be a hollow promise and a preliminary injunction appropriate." Tom Doherty Associates, Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 38 (2d Cir. 1995).

In this case, as set forth in plaintiff's Declaration in support of this application, plaintiff has shown that, if plaintiff does not receive at least $197,000 of the money due under the either of the two business interruption insurance claims by May 17, 2020, plaintiff will lose its good will and its entire business. (Pl.Decl., paras. 7-15).

Plaintiff intends on utilizing that money to professionally clean the premises on May 16, 2020 when Executive Orders 202.17 and 202.18 expire and limited access to non-

essential workplaces in New York City may occur. (Pl.Decl.,
para. 8, Exs. 11, 12 & 13).  Alternatively, if non-essential
workplaces in New York City are still prohibited after May 15,
2020, then plaintiff will be able to find alternative
manufacturing sites outside of New York City after May 15, 2020
under the re-opening plan described the Governor of New York
State. (Pl.Decl., para. 8, Ex. 13).

If plaintiff receives the requested insurance money by May
17, 2020, plaintiff will be able to publish a magazine in time
to be distributed by the weekend that starts on Friday, May 29,
2020 and thereby fulfill its contractual obligations with its
advertisers. (Id., para. 9).

Plaintiff's business will not survive the loss of good will
with its advertising customers if it is unable to publish any
magazines by the beginning of this summer.  (Id., para. 10).
Plaintiff is a small and growing business in an extremely
competitive environment that includes Hamptons Magazine, The
Daily Front Row, The Purist, Beach Magazine, Avenue, and Dan's
Papers.  (Id.).  As a result, its relationship with its
customers is extremely fragile. (Id.).

If plaintiff is not able to timely deliver its monthly
product containing its customers' advertising, those customers
will lose confidence in plaintiff and (1) place their
advertising with competitors of the plaintiff, (2) never place

advertising with the plaintiff in the future once they have secured new advertising options and/or (3) elect not to do business with plaintiff in the future given plaintiff's demonstrated unreliability due to the failure to produce a magazine pursuant to its contractual requirements. (Id., para. 11).

In addition, it is impossible to accurately quantify precisely how much business plaintiff will lose if it cannot publish a magazine this summer with the defendant's insurance proceeds. (Id., para. 12). It is also impossible to accurately quantify precisely how much business plaintiff will continue to lose if it is unable to place the advertisements requested by its customers. (Id.). Once plaintiff loses a customer, that customer will not return given that it left due to a bad experience with plaintiff's business. (Id.).

Plaintiff cannot afford to wait for the completion of this lawsuit in order to try to recoup its monetary losses from defendants and re-start its business from scratch. (Id., para. 13). Unless, plaintiff obtains the requested relief, the irreparable harm to plaintiff will be complete as plaintiff will be out of business given that the good will and credibility with its advertisers will have been destroyed. (Id.).

<u>The Balance Of Hardships Tips in Plaintiff's Favor</u>.

The balance of hardships tips in plaintiff's favor. Whereas plaintiff's entire business is at risk if it does not receive the requested insurance money by May 17, 2020, defendant's business will continue to operate normally during the pendency of this lawsuit.  Accordingly, this factor favors granting the relief sought by plaintiff.

<u>The Public Interest Would Not Be Disserved By The Issuance Of An Injunction.</u>

Because the public interest is not implicated in connection with the relief sought, the public interest would not be disserved by the issuance of an injunction. Accordingly, this factor favors granting the relief sought by plaintiff.

<u>Conclusion</u>

For all the foregoing reasons, plaintiff respectfully requests that the Court grant the proposed preliminary injunction.

Dated:     New York, New York
           May 4, 2020              _____/s/_____
                                    Gabriel Fischbarg, Esq,
                                    230 Park Avenue, #904
                                    New York, New York 10169
                                    917-514-6261
                                    Attorney for Plaintiff